# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Lyle M. Heyward,                                    Case No. 3:16-cv-2774

    Plaintiff,

v.                                                  MEMORANDUM OPINION
                                                    AND ORDER

Heather Cooper, *et al.*,

    Defendants.

## I.    INTRODUCTION

Plaintiff Lyle Heyward, proceeding *pro se*, alleges certain wrongdoing arising out of incidents which occurred within the food service operations at the Allen Oakwood Correctional Institution, where he is incarcerated, as well as by certain staff members at the facility. (Doc. No. 4). Defendants Heather Cooper and Brian Townsend (the "Aramark Defendants"), and Defendants Joanna Factor, Sheila McNamara, Sylvia Moseley, John Neth, Cori Smith, and Anthony Streeter (the "ODRC Defendants")[1] have filed motions for judgment on the pleadings. (Doc. No. 54 and 55). Heyward has not filed a brief in opposition to either motion. For the reasons stated below, the motion of the Aramark Defendants, (Doc. No. 54), is denied, and the motion of the ODRC Defendants, (Doc. No. 55), is granted in part and denied in part.

---

[1] Kandis Simpson has not yet been served, (Doc. No. 42), and therefore Simpson is not a party to either motion.

## II. BACKGROUND

Heyward worked as a line server in the prisoners' cafeteria at the Allen Oakwood Correctional Institution. The Aramark Corporation contracts with the Ohio Department of Rehabilitation and Correction ("ODRC") to provide food service operations at Allen Oakwood, among other things. Heyward claims he was removed from his position after he filed a grievance concerning an incident on December 20, 2015, in which Cooper allegedly yelled and cursed at him and other inmates working in the cafeteria. (Doc. No. 4 at 2-3). Heyward asserts this grievance led to a conspiracy in which Cooper and Townsend, both Aramark employees, engaged the assistance of numerous prison staff members and supervisors to file false conduct reports against Heyward and to increase his security classification as a way to justify Heyward's removal from the line server position. (Doc. No. 4 at 3-4).

He alleges that, a few days after he gave Townsend a copy of his grievance concerning Cooper's behavior, Townsend presented him with an inmate evaluation report that accused Heyward of cursing at Cooper and helping other inmates file out complaints against Aramark. Heyward alleges Townsend told him "Heyward, you're fired . . . you know what I've said about complaints." (Doc. No. 4 at 3). The report listed a Lieutenant Ward as a witness, but Heyward asserts Ward informed his supervisors that he had not witnessed any of the conduct alleged in the report. (Doc. No. 4 at 3).

Heyward then filed grievances concerning the inmate evaluation report – which Heyward alleges constitutes the falsification of official records – because that report would have "a deleterious effect" on his parole eligibility and institutional classification. (Doc. No. 4 at 4). He alleges the "Unit Management Chief/Administrator, Ms. C. Ester," and the Deputy Warden of Operations, Cori Smith, failed to provide him with due process as required by ODRC policies, failed to respond to the grievances Heyward submitted, and then, along with Factor, attempted to cover up what had

occurred when they lied by promising they would reverse Heyward's reclassification. (Doc. No. 4 at 4).

Heyward claims Smith began retaliating against him when he continued to pursue his administrative remedies, by "fabricating fantastically false claims that Plaintiff posed some unknown and unstated/[unspecified] security threat in combination with a phantom Rules Infraction Board (RIB) record." (Doc. No. 4 at 4).

He also alleges the retaliation did not stop there. Heyward states Simpson, an officer in his cell block, fabricated a conduct report claiming Heyward had weapons in his cell and had threatened Simpson. (Doc. No. 4 at 4). Heyward claims this conduct report was thrown out after video from the time frame allegedly in question showed he was not in his cell block when Simpson claimed he threatened her. (Doc. No. 4 at 4). Heyward claims Simpson persuaded Neth and Streeter to assault Heyward under the guise of a cell search, and the Major at Allen Oakwood, C. Bendross, "refused to acknowledge the incident even happened" because Simpson is his niece. (Doc. No. 4 at 4-5). Heyward alleges his continued oral and written complaints led only to further retaliation, including a retaliatory "strip-search and cell shakedown that resulted in [the] destruction of $2,237.92 worth of Plaintiff's legitimately [acquired] and possessed non-contraband personal property.[2] (Doc. No. 4 at 5).

Further, Heyward alleges that, on April 11, 2016, McNamara, the Inspector of Institutional Services at Allen Oakwood, confronted him concerning his pending grievances and told him "you're going to regret it if you don't drop these complaints, Heyward." (Doc. No. 4 at 5). Heyward repeatedly refused McNamara's demands to drop the grievances, and McNamara allegedly responded by confiscating Heyward's religious head covering, known as a kufi, despite the fact that

---

[2] The parties agree this incident resulted in Heyward filing suit in the Ohio Court of Claims. (Doc. No. 4 at 5; Doc. No. 55 at 34-35). None of the parties, however, have filed copies of any of the documents from that case, and the Ohio Court of Claims opinion described is not publicly available.

3

Heyward had two accommodation forms authorizing him to possess and wear the kufi. (Doc. No. 4 at 5-6).

On April 19, 2016, Heyward alleges he was informed by a hearing officer that McNamara had filed a conduct report accusing Heyward of forging his accommodation forms. (Doc. No. 4 at 6). Heyward asserts this report also was in retaliation for his refusal to cease pursuing his administrative remedies, and that the report was thrown out after he demonstrated his forms were authentic. (Doc. No. 4 at 6).

He asserts claims under 42 U.S.C. § 1983 for violation of his First, Fourth, and Fourteenth Amendment rights, as well as the Religious Land Use & Institutionalized Persons Act ("RLUIPA"), and requests compensatory and punitive damages. (Doc. No. 4 at 1, 9).

### III. STANDARD

Rule 12(c) motions for judgment on the pleadings are subject to the same standard as a Rule 12(b)(6) motion to dismiss. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). A court construes the complaint in the light most favorable to the plaintiff and accepts as true well-pleaded factual allegations. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Factual allegations must be sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Legal conclusions and unwarranted factual inferences are not entitled to a presumption of truth. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In ruling on a motion to dismiss, a court may consider public records as well as documents attached to the motion to dismiss if those documents "are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), abrogated on other grounds by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

## IV. ANALYSIS

Defendants assert Heyward fails to state a claim for relief, even after taking into account the extra latitude provided to pro se filings. *See, e.g.*, *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016) (noting pro se pleadings are held to less stringent standards than attorney filings) (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). The ODRC Defendants also assert some of Heyward's claims are barred by the *Leaman* doctrine, because he pursued those claims in the Ohio Court of Claims, and that some of his other claims fail under the doctrine of qualified immunity.

Despite the appointment of pro bono counsel, (Doc. No. 32), Heyward has not filed a brief opposing either of the motions.

### A. FREE SPEECH

Heyward may state a claim for violation of his First Amendment rights by showing "(1) [he] engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) . . . the adverse action was motivated at least in part by [his] protected conduct." *Pasley v. Conerly*, 345 F. App'x 981, 984 (6th Cir. 2009) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)) (alterations in original). Heyward pleads sufficient facts to state a plausible claim for the violation of his First Amendment free speech rights.

First, Heyward's allegations show he engaged in protected conduct when he filed a grievance challenging Cooper and Townsend's allegedly-fabricated inmate evaluation report. (Doc. No. 4 at 3). Inmates have a First Amendment right to file grievances against prison officials. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Heyward alleges the Defendants retaliated against him and that the retaliation was motivated by his protected conduct.

Both the Aramark and ODRC Defendants claim Heyward's grievances were frivolous, and thus do not constitute protected conduct, because Heyward does not have a protected interest in his

cafeteria job. *See, e.g., Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("It is well established . . . that no prisoner has a constitutional right to a particular job or to any job."). But Heyward asserts something more than a complaint about losing his job – he claims that this and other subsequent conduct reports may be considered by the Parole Board in determining whether Heyward is eligible for parole. The Sixth Circuit previously has concluded false conduct reports which may ultimately result in an inmate serving more time in prison or being subjected to disciplinarily sanctions violate an inmate's First Amendment rights when those reports arise as retaliation. *See, e.g., Scott v. Churchill*, 377 F.3d 565, 571 (6th Cir. 2004); *Cale v. Johnson*, 861 F.2d 943, 948-51 (6th Cir. 1988).

Moreover, the Defendants do not focus on the pertinent right. While Heyward plainly believes he was wronged when he was fired from his cafeteria position, he also plainly believes he was fired, and suffered subsequent other forms of retaliation, because he filed grievances. Heyward alleges Cooper helped to fabricate conduct reports about Heyward and Townsend told him "you know what I've said about complaints" before firing him, (Doc. No. 4 at 3), that Smith and Factor attempted to cover up the reason he was fired and also fabricated misconduct reports when Heyward continue to file grievances, (Doc. No. 4 at 4), that Simpson persuaded Neth and Streeter to assault Heyward after Heyward filed grievances about conduct reports Simpson purportedly fabricated, (Doc. No. 4 at 4-5), and that McNamara confiscated his kufi when Heyward refused to drop his grievances. (Doc. No. 4 at 5-6).

Heyward offers sufficient allegations to support his claim that the Defendants' actions violated "the existing right to avoid retaliation for exercising the First Amendment right to file grievances against prison officials." *Bradley v. Conarty,* 2018 WL 5883929, at *2 (6th Cir. Sept. 13, 2018) (quoting *Walton v. Gray*, 695 F. App'x 144, 145-46 (6th Cir. 2017) (per curiam)).

The Defendants also argue Heyward's retaliation claims fail because his complaints about verbal threats do not establish a constitutional violation. (Doc. No. 54 at 9-10; Doc. No. 55 at 20).

6

These arguments are not persuasive because Heyward's grievances do not have to allege violations of his constitutional rights in order for those grievances themselves to be protected by the First Amendment. "[W]hile certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005) (quoting *Thaddeus-X*, 175 F.3d at 398).

Additionally, the ODRC Defendants argue Heyward fails to allege specific facts concerning his alleged assault by Neth and Streeter – including the date on which he was assaulted and "what conduct he believes constitutes the assault" – or to support a retaliation claim against McNamara because he fails to allege "when he filed the grievances, what they entailed, or whether they were granted or denied." (Doc. No. 55 at 20-21). The ODRC Defendants overreach. Their latter argument ignores the context of Heyward's claims against McNamara, which follow five pages of background and allegations about his grievances. (Doc. No. 4 at 5 ("On 4-11-2016, at approximately 1400 – 1420 [hours,] Plaintiff was called up to the office of the [Inspector of Institutional Services] to be interviewed concerning the grievances pending on the issues stated herein at paragraphs 13 through 23 . . . .")). Further, Heyward is not required to plead every detail of the allegations underlying his claims in order to survive a Rule 12 motion; he must only allege sufficient facts to state a plausible claim for relief. *Cf.* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake.").

The ODRC Defendants also argue McNamara did not retaliate against Heyward for filing grievances when she confiscated his multi-colored kufi, because possession of a kufi that is not white or beige constitutes the possession of contraband under prison rules. (Doc. No. 55 at 21-22). The ODRC Defendants fail to acknowledge that Heyward's allegations go further, as Heyward

7

alleges McNamara fabricated a conduct report claiming Heyward forged his religious accommodation approval forms. (Doc. No. 4 at 6).

Finally, the ODRC Defendants claim they are entitled to qualified immunity. (Doc. No. 55 at 29-31). A government official is entitled to qualified immunity if a plaintiff does not allege sufficient facts to show the official's conduct violated a clearly-established constitutional right. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). The ODRC Defendants are not entitled to qualified immunity because Heyward alleges they retaliated against him for exercising his First Amendment speech rights by filing grievances. *Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018) ("'[T]his Court has repeatedly recognized that if a prison officer 'retaliated against [a prisoner] for filing grievances,' the 'alleged conduct also comprises a violation of clearly established constitutional law.'" (quoting *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996))).

I conclude Heyward offers sufficient allegations to state a plausible claim for retaliation in violation of his First Amendment rights against Cooper, Townsend, Simpson, McNamara, Neth, Streeter, Smith, and Factor.

### B. FREE EXERCISE OF RELIGION

Heyward claims McNamara violated his rights under the RLUIPA and the First Amendment's Free Exercise Clause by confiscating his kufi. The RLUIPA "protects 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief,' . . . but, of course, a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation . . . ." *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015). Heyward must show the Defendants' actions "substantially burdened that exercise of religion." *Id.* Heyward fails to allege how his rights are substantially burdened by the ODRC's requirement that he wear a white and beige kufi instead of a multi-colored one.

8

Heyward's First Amendment Free Exercise claims against McNamara fail as well, as the RLUIPA provides broader protections for religious liberty than the text of the First Amendment. *Holt*, 135 S. Ct. at 860.

Heyward also alleges Moseley and Factor violated his First Amendment free exercise rights, when they allegedly convinced the Parole Board to give him "5 years flop time" after Moseley denied Heyward's attempts to attend church and sing in the Allen Oakwood choir because he is not a Christian. (Doc. No. 4 at 7). While Heyward claims the statute of limitations on his claim should be tolled because McNamara purportedly incorporated Moseley's actions into her retaliatory conduct, he offers no facts to substantiate this argument. Heyward's claims against Moseley and Factor are barred because those claims accrued no later than September 8, 2014, (Doc. No. 4 at 7), and Heyward failed to bring those claims within two years of the accrual date. *Klayman v. Loeb*, 2016 WL 29228, at *3 (N.D. Ohio, Jan. 4, 2016) (holding the statute of limitations for § 1983 free exercise claims in Ohio is two years, pursuant to Ohio Revised Code § 2305.10).

I grant the ODRC Defendants' motion for judgment on the pleadings as to Heyward's RLUIPA and free exercise claims.

### C. CIVIL CONSPIRACY

In order to state a claim for civil conspiracy, Heyward must allege two or more persons agreed to unlawfully injure him. He must show (1) there was a single plan; (2) the alleged co-conspirators "shared in the general conspiratorial objective"; and, (3) one or more of the co-conspirators committed an overt act in furtherance of the conspiracy which injured Heyward. *Jewell v. Leroux*, 20 F. App'x 375, 378 (6th Cir. 2001). Civil conspiracy claims "must be pled with some degree of specificity." *Huffer v. Bogen*, 503 F. App'x 455, 462 (6th Cir. 2012) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)).

9

Heyward offers only the conclusory allegation that his reclassification "amount[ed] to a [conspiratorially] planned disciplinary action." (Doc. No. 4 at 4). He does not allege specific details about "an agreement or shared plan between the individual defendants to violate his civil rights," and therefore he fails to state a claim for civil conspiracy. *Huffer*, 503 F. App'x at 462.

### D. DUE PROCESS

Heyward also alleges he was denied due process when the Defendants denied him the opportunity to appeal his reclassification or the denial of his grievances. Generally, "a prisoner has no constitutional right to an effective prison grievance procedure." *Hursey v. Anderson*, 2017 WL 3528206, at *2 (citing *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003)). Heyward does not allege he suffered an "atypical and significant hardship," *Sandin v. Conner*, 515 U.S. 472, 484 (1995), as a result of the Defendants' alleged failure to follow its grievance policy, and therefore he fails to state a claim for violation of his due process rights. *See, e.g., Metcalf v. Veita*, 156 F.3d 1231, at *2 (6th Cir. 1998) (unreported table decision).

### E. THE LEAMAN DOCTRINE

The ODRC Defendants argue any claims Heyward asserts arising out of McNamara's confiscation of his kufi and the March 2016 search of his cell are precluded by the *Leaman* doctrine. *Leaman v. Ohio Dep't of Metnal Retardation & Dev. Disabilities*, 825 F.2d 946 (6th Cir. 1987) (en banc). The *Leaman* doctrine provides that a plaintiff waives his right to pursue claims under § 1983 if the plaintiff first pursued those claims in the Ohio Court of Claims. *Id.* at 952. This doctrine requires a federal court to "make a factual determination as to whether a pro se litigant knowingly, intelligently, and voluntarily waived his federal claims when filing suit in the Ohio Court of Claims. *Alford v. Mohr*, Case No. 1:15-cv-645, 2018 WL 1136924, at *9 (S.D. Ohio, March 1, 2018).

Both Heyward and the ODRC Defendants reference a case Heyward filed with the Ohio Court of Claims concerning his cell search. (*See* Doc. No. 4 at 5 (referencing Court of Claims Case

10

No. 2016-00641-AD)). None of the parties, however, have attached a copy of the opinion from the Court of Claims, and that opinion is not publicly available on the website of the Supreme Court of Ohio. As a result, I cannot determine whether or not Heyward knowingly waived federal claims by filing that lawsuit, or which claims he may have waived. Therefore, I decline to apply the *Leaman* doctrine to bar any claims for relief which have not already been resolved by the Defendants' motions.

## V. CONCLUSION

For the reasons stated above, the motion of Defendants Cooper and Townsend for judgment on the pleadings, (Doc. No. 54), is denied. The motion of Defendants Factor, McNamara, Moseley, Neth, Smith, and Streeter for judgment on the pleadings, (Doc. No. 55), is denied as to Heyward's claim for retaliation in violation of his First Amendment free speech rights, and granted as to Heyward's claims for civil conspiracy and for violation of his religious free-exercise rights and his due process rights. Moseley is dismissed as a defendant, as all claims against her have been resolved.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge