UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Lyle M. Heyward,

        Plaintiff,

v.

Heather Cooper, *et al.*,

        Defendants.

Case No. 3:16-cv-2774

MEMORANDUM OPINION
AND ORDER

## I. INTRODUCTION

Defendants Heather Cooper and Brian Townsend and Defendants Joanna Factor, Sheila McNamara, John Neth, Cori Smith, and Anthony Streeter (the "ODRC Defendants")[1,2] have filed motions for summary judgment on all remaining claims asserted by Plaintiff Lyle Heyward. (Doc. Nos. 73 and 75). Heyward, through appointed counsel, filed a brief in opposition to both motions. (Doc. No. 82). The ODRC Defendants and Cooper and Townsend filed reply briefs in support of their motions. (Doc. Nos. 83 and 84). For the reasons stated below, I grant both motions.

---

[1] Kandis Simpson has not yet been served, (Doc. No. 42), and therefore Simpson is not a party to either motion. Plaintiff has been on notice since at least March 2019, however, that service had not been completed on Defendant Simpson. The deadline for Plaintiff to complete service on Simpson has long passed. *See* Fed. R. Civ. P. 4(m). Therefore, I dismiss Heyward's claims against Simpson without prejudice.

[2] Another ODRC employee named as a defendant, Sylvia Moseley, previously was dismissed from this litigation. (Doc. No. 57).

## II. BACKGROUND

Cooper and Townsend and the ODRC Defendants previously filed motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. In ruling upon those motions, I summarized Heyward's allegations:

> Heyward worked as a line server in the prisoners' cafeteria at the Allen Oakwood Correctional Institution. The Aramark Corporation contracts with the Ohio Department of Rehabilitation and Correction ("ODRC") to provide food service operations at Allen Oakwood, among other things. Heyward claims he was removed from his position after he filed a grievance concerning an incident on December 20, 2015, in which Cooper allegedly yelled and cursed at him and other inmates working in the cafeteria. (Doc. No. 4 at 2-3). Heyward asserts this grievance led to a conspiracy in which Cooper and Townsend, both Aramark employees, engaged the assistance of numerous prison staff members and supervisors to file false conduct reports against Heyward and to increase his security classification as a way to justify Heyward's removal from the line server position. (Doc. No. 4 at 3-4).
>
> He alleges that, a few days after he gave Townsend a copy of his grievance concerning Cooper's behavior, Townsend presented him with an inmate evaluation report that accused Heyward of cursing at Cooper and helping other inmates file out complaints against Aramark. Heyward alleges Townsend told him "Heyward, you're fired . . . you know what I've said about complaints." (Doc. No. 4 at 3). The report listed a Lieutenant Ward as a witness, but Heyward asserts Ward informed his supervisors that he had not witnessed any of the conduct alleged in the report. (Doc. No. 4 at 3).
>
> Heyward then filed grievances concerning the inmate evaluation report – which Heyward alleges constitutes the falsification of official records – because that report would have "a deleterious effect" on his parole eligibility and institutional classification. (Doc. No. 4 at 4). He alleges the "Unit Management Chief/Administrator, Ms. C. Ester," and the Deputy Warden of Operations, Cori Smith, failed to provide him with due process as required by ODRC policies, failed to respond to the grievances Heyward submitted, and then, along with Factor, attempted to cover up what had occurred when they lied by promising they would reverse Heyward's reclassification. (Doc. No. 4 at 4).
>
> Heyward claims Smith began retaliating against him when he continued to pursue his administrative remedies, by "fabricating fantastically false claims that Plaintiff posed some unknown and unstated/[unspecified] security threat in combination with a phantom Rules Infraction Board (RIB) record." (Doc. No. 4 at 4).
>
> He also alleges the retaliation did not stop there. Heyward states Simpson, an officer in his cell block, fabricated a conduct report claiming Heyward had weapons in his cell and had threatened Simpson. (Doc. No. 4 at 4). Heyward claims this conduct report was thrown out after video from the time frame allegedly in question showed

2

> he was not in his cell block when Simpson claimed he threatened her. (Doc. No. 4 at 4). Heyward claims Simpson persuaded Neth and Streeter to assault Heyward under the guise of a cell search, and the Major at Allen Oakwood, C. Bendross, "refused to acknowledge the incident even happened" because Simpson is his niece. (Doc. No. 4 at 4-5). Heyward alleges his continued oral and written complaints led only to further retaliation, including a retaliatory "strip-search and cell shakedown that resulted in [the] destruction of $2,237.92 worth of Plaintiff's legitimately [acquired] and possessed non-contraband personal property. . . . (Doc. No. 4 at 5).
>
> Further, Heyward alleges that, on April 11, 2016, McNamara, the Inspector of Institutional Services at Allen Oakwood, confronted him concerning his pending grievances and told him "you're going to regret it if you don't drop these complaints, Heyward." (Doc. No. 4 at 5). Heyward repeatedly refused McNamara's demands to drop the grievances, and McNamara allegedly responded by confiscating Heyward's religious head covering, known as a kufi, despite the fact that Heyward had two accommodation forms authorizing him to possess and wear the kufi. (Doc. No. 4 at 5-6).
>
> On April 19, 2016, Heyward alleges he was informed by a hearing officer that McNamara had filed a conduct report accusing Heyward of forging his accommodation forms. (Doc. No. 4 at 6). Heyward asserts this report also was in retaliation for his refusal to cease pursuing his administrative remedies, and that the report was thrown out after he demonstrated his forms were authentic. (Doc. No. 4 at 6).
>
> He asserts claims under 42 U.S.C. § 1983 for violation of his First, Fourth, and Fourteenth Amendment rights, as well as the Religious Land Use & Institutionalized Persons Act ("RLUIPA"), and requests compensatory and punitive damages. (Doc. No. 4 at 1, 9).

(Doc. No. 57 at 2-4).

I denied Cooper and Townsend's motion for judgment on the pleadings as to Heyward's First Amendment retaliation claim against them. (*Id.* at 5-7). I denied the ODRC Defendants' motion as to Heyward's retaliation claim against them and granted their motion as to Heyward's claims: (a) for civil conspiracy; (b) for violation of his religious free-exercise rights and due process rights; and (c) against Moseley. (*Id.* at 5-11).

The parties then conducted discovery regarding Heyward's claims, which included taking Heyward's deposition. Defendants now seek summary judgment on Heyward's remaining First Amendment retaliation claims.

3

### III. STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the opposing party's claim. *Id.* at 323-25.

Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* Fed. R. Civ. P. 56(e)). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322

All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson*, 477 U.S. at 248. A disputed fact is material only if its resolution might

4

affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

### IV.    ANALYSIS

The Constitution prohibits "[r]etaliation based upon a prisoner's exercise of his or her constitutional rights," *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001), including the First Amendment right to file meritorious grievances against prison officials on the inmate's own behalf. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). An inmate asserting a claim for unlawful retaliation resulting from the exercise of the inmate's First Amendment rights "must prove that (1) he engaged in protected conduct, (2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) the adverse action was taken at least in part because of the exercise of the protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 393 (6th Cir. 1999)).

Because I conclude Heyward has not set forth sufficient evidence to demonstrate a reasonable jury could return a verdict in his favor, Defendants' motions for summary judgment are granted.

### A.    Cooper and Townsend

Cooper and Townsend assert Heyward's grievances were frivolous, and thus do not constitute protected conduct, because (1) Heyward filed the grievances "as retribution" for the way Cooper spoke to inmates, and (2) inmates do not have a constitutional right to free from verbal harassment. (Doc. No. 73 at 6). Further, they argue there is no causal connection between Heyward's grievances and the adverse actions Heyward alleges he suffered. (*Id.* at 12-16).

Heyward disagrees, arguing he filed the grievances because he believed Cooper's behavior represented a danger to herself and inmates, and that his removal from his job in the kitchen is sufficient to deter a person of ordinary firmness from continuing to file grievances regarding the

5

Defendants' conduct. (Doc. No. 82 at 12-14). He also "claims that this job dispute and the grievances that were filed after it negatively impacted his opportunity for parole." (*Id.* at 11).

I conclude Heyward fails to show there is a genuine dispute of material fact as to whether he engaged in protected conduct. His December 25, 2015 Informal Complaint Resolution ("ICR") submission contains a lengthy list of alleged violations of the Constitution, the Ohio Revised Code, the Ohio Administrative Code, and ODRC policies. (Doc. No. 73-3 at 1).

But his factual allegations boil down to a complaint regarding Cooper's "aggressive tone and abusive language," contending she was being "highly disrespectful." (*Id.* at 2). As he argues in response to Cooper and Townsend's motion for summary judgment, he filed his grievance because "her attitude and way of dealing with inmates constituted a danger to her and to the safety of the institution." (Doc. No. 82 at 14). In short, Heyward asserted Cooper was speaking and acting in a way which might cause or provoke one or more inmates to assault her.

While, for policy reasons, institutions no doubt would prefer staff members take a different tack in their interactions with inmates, Heyward has not established Cooper actually violated any institutional rules or that he was entitled to some form of relief due to the risk of a future altercation between Cooper and other inmates. Further, as Cooper and Townsend note, (Doc. No. 73 at 7), inmates do not have a constitutional right to be free from verbal abuse or harassment. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). Heyward has not demonstrated his grievance had merit and, therefore, he fails to show he engaged in protected conduct by filing the December 25, 2015 ICR. *Herron*, 203 F.3d at 415 (rejecting plaintiff's retaliation claim because plaintiff lacked a meritorious underlying claim).

For the same reasons, I also conclude Heyward's December 31, 2015 ICR does not constitute protected conduct. In that grievance, Heyward complained Townsend had not corrected

6

Cooper's behavior or investigated Heyward's allegations. (Doc. No. 73-4 at 1). Heyward fails to show he had a right to the redress of his earlier meritless grievance.

Even when viewed in the light most favorable to Heyward, the record evidence does not create a genuine dispute of material fact as to whether Heyward engaged in protected conduct. I need not consider whether Heyward has adequately identified an adverse action taken by these Defendants because, without evidence he engaged in protected conduct, Heyward cannot establish any adverse action resulted from a retaliatory motive. Therefore, Cooper and Townsend are entitled to summary judgment on Heyward's First Amendment retaliation claim against them. *See Ziegler v. State of Michigan*, 90 F. App'x 808, 810 (6th Cir. 2004).

### B. The ODRC Defendants

The ODRC Defendants argue they also are entitled to summary judgment on Heyward's First Amendment retaliation claims against Defendants Factor, Smith, Neth, Streeter, and McNamara. (Doc. No. 75 at 12-19).

The ODRC Defendants assert the record does not contain any evidence that Factor and Smith retaliated against Heyward for engaging in protected conduct. (Doc. No. 75 at 12-13; Doc. No. 83 at 4-5). Heyward claims Factor lied about Heyward's institutional behavior record in denying his appeal of his removal from his job in the kitchen. (Doc. No. 82 at 19). Heyward asserts Factor did so in retaliation for Heyward filing grievances. (*Id.*).

Heyward's arguments fall short. I already have concluded the grievances Heyward filed against Cooper and Townsend do not constitute protected conduct and Heyward does not point to any other grievances or informal complaints which might constitute protected conduct for the purpose of his claim against Factor.

Heyward's claim against Smith fails for the same reason. Heyward argues only that Smith "implicitly authoriz[ed or] acquiesc[ed in] the unconstitutional action of subordinates." (Doc. No.

7

82 at 20).  He has not produced any evidence of protected conduct, an underlying unconstitutional action, or of an adverse action taken by Smith.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("[A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'") (quoting *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)).

Next, the ODRC Defendants argue they are entitled to summary judgment on Heyward's claims against Neth and Streeter.  (Doc. No. 75 at 13-16).  Heyward concedes "he cannot sustain his claim against Streeter" but maintains that Neth assaulted him in retaliation for filing grievances against another corrections officer (Simpson).  (Doc. No. 82 at 20-21).  Heyward does not point to evidence as to when he filed these grievances or their content.  (*Id.*)

The ODRC Defendants are entitled to summary judgment on Heyward's claim against Neth because Heyward has not identified sufficient evidence from which a reasonable jury could find in his favor.  In his deposition testimony, Heyward claims Neth came into his cell and assaulted him because Cooper and Simpson told Neth to do so.  (Doc. No. 72-1 at 66, 72-77).  But Heyward has not supported his allegations.  *See, e.g., Viergutz v. Lucent Tech., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (A party opposing summary judgment is "obligated . . . to 'identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial.'") (quoting *Amini v. Oberlin Coll.*, 440 F.3d 350, 357 (6th Cir. 2006)).

He does not say that Cooper, Simpson, or Neth told him Cooper and Simpson sent Neth to his cell, and Neth specifically denies threatening or assaulting Heyward for writing grievances against Simpson.  (Doc. No. 75-6 at 1).  Heyward's unsupported beliefs and hypotheses about what motivated Neth's alleged conduct are not sufficient to defeat the ODRC Defendants' summary judgment motion.  Further, as I noted above, Heyward's brief in opposition to the ODRC

8

Defendants' summary judgment motion did not identify when he filed the grievances against Simpson. He has not met his burden of establishing a genuine dispute of material fact as to his claims against Neth.

Lastly, the ODRC Defendants contend they are entitled to summary judgment on Heyward's claims against McNamara. Heyward asserts McNamara violated his rights by improperly confiscating his kufi and accusing him of writing a false conduct report (asserting Heyward had forged religious accommodation forms) in retaliation for filing grievances. (Doc. No. 4 at 5-6). The ODRC Defendants argue these claims are barred by the *Leaman* doctrine, because Heyward already raised them in a lawsuit before the Ohio Court of Claims. *See Leaman v. Ohio Dep't of Mental Retardation & Developmental Disabilities*, 825 F.2d 946 (6th Cir. 1987) (en banc). The *Leaman* doctrine provides that a plaintiff waives his right to pursue any cause of action, including claims under § 1983, if the plaintiff first pursued those causes of action in the Ohio Court of Claims. *Id.* at 952.

Heyward asserted a cause of action before the Ohio Court of Claims in which he alleged McNamara "confiscated and destroyed his Gold Crescent & Star Pendant Kufi . . . [allegedly because of] plaintiff's forgery of a Religious Accommodation Approval form." (Doc. No. 75-1 at 2). Heyward concedes the *Leaman* doctrine precludes him from pursuing any other federal or state causes of action arising out of this incident. (Doc. No. 82 at 19). Therefore, I conclude the ODRC Defendants also are entitled to summary judgment on Heyward's claims against McNamara.

9

V.    CONCLUSION

For the reasons stated above, I grant the motions for summary judgment filed by Defendants Cooper and Townsend, (Doc. No. 73), and Defendants Factor, McNamara, Neth, Smith, and Streeter. (Doc. No. 75). Further, I also dismiss Heyward's claims against Defendant Simpson pursuant to Rule 4(m).

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge